## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

DUNCAN-WILLIAMS, INC.,

       Plaintiff,

                          CIVIL ACTION
      v.                   CASE NO. 2:09-cv-02098-WGY

CAPSTONE DEVELOPMENT, LLC, EUGENE
H. BORGOSZ, SELECTIVE SERVICES,
INC., UNIVERSITY CLUB GROUP, INC.,
UC PROPERTIES, LLC, TRIANGLE
CONSTRUCTION MANAGEMENT, LLC,
CAPSTONE IMPROVEMENT DISTRICT,

       Defendants.

## MEMORANDUM & ORDER

## I.    INTRODUCTION

This motion involves indemnity and contribution claims by

Duncan-Williams, Inc. ("Duncan-Williams") seeking $1,200,000 that

Duncan-Williams paid to Ruskin Vest, a buyer of bonds funding a

real estate development involving each of the Moving Defendants,

Eugene H. Borgosz, Capstone Development, LLC, Triangle

Construction Management, LLC, and Selective Services, Inc. (the

"Borgosz entities").[1]  The Borgosz entities now seek summary
judgment on all counts.

## A.   **Procedural Posture**

Originally filed in Shelby County Chancery Court, this case
was removed by defendant Nexsen Pruet, LLC on February 20, 2009.
Pet. Removal, ECF No. 1.  Judge Samuel H. Mays, Jr., was the
original presiding judge, ECF No. 28, and  originally set the
case for trial on January 18, 2011, Clerk's Minutes, June 11,
2009, ECF No. 48.

The defendants Hilburn, Calhoon, Harper, Pruniski & Calhoun,
LTD ("Hilburn") and Tanner & Guin, LLC ("Tanner") filed motions
to dismiss in February 2009, Def. Hilburn Firm's Mot. Dismiss,
ECF No. 4; Def. Tanner & Guin LLC's Mot. Dismiss Lack Personal
Jurisdiction, ECF No. 3*,[2] and the Borgosz entities filed a
motion to dismiss in March 2009, Borgosz's & Borgosz Entities'
Mot. Dismiss Lack Personal Jurisdiction, ECF No. 15.  In a
thorough memorandum and order on July 7, 2010, the Court held
that it lacked jurisdiction over Tanner but had jurisdiction over

_____

[1] In a memorandum and order, Judge Samuel Mays, Jr., noted
that Capstone Development, LLC, Selective Services, Inc., and
Triangle Construction Management, LLC were all partly or
completely controlled by the defendant Eugene H. Borgosz at the
time of the transactions in question and titled these defendants
collectively as the "Borgosz entities."  Order Defs.' Mot.
Dismiss Lack Personal Jurisdiction 1, ECF No. 60.  The Borgosz
entities are also the moving parties here.

[2] The docket entry referenced with an asterisk (*) was filed
in case number 2:09-cv-02109-SHM-tmp, an associated case.

Hilburn and the Borgosz entities. Order Defs.' Mot. Dismiss Lack
Personal Jurisdiction ("July 2010 Order") 25, ECF No. 60. In
2011, the Court dismissed the defendants Hilburn and Nexsen
Pruet, LLC with prejudice as a result of joint stipulations by
the parties pursuant to a private agreement. Order Dismissing
Def. Nexsen Pruet, LLC with Prejudice, ECF No. 113; Joint
Stipulation Dismissal Prejudice Hilburn, ECF No. 133.
Duncan-Williams never obtained service on the defendants
University Club Group, Inc. and UC Properties, LLC. Clerk's
Minutes, June 23, 2011, ECF No. 110.

On June 26, 2009, the Capstone Improvement District and
Duncan-Williams filed a joint stipulation assigning the former's
rights to the latter. Joint Stipulation Capstone Improvement
Dist. & Duncan-Williams, Inc., ECF No. 51. Duncan-Williams
amended its complaint by permission in July 2011, adding counts
for contribution under the Tennessee Securities Act and
contribution under the Tennessee Uniform Contribution Among Tort-
feasors Act.[3] First Am. Compl. Contribution & Indem. ("Am.
Compl."), ECF No. 128. The Court also consolidated and
administratively closed an associated case, Civ. No. 09-2091.
Elec. Order, July 29, 2011, ECF No. 114. Trial was reset for
March 2012, Clerk's Minutes, Aug. 11, 2011, ECF No. 123, and then

---

[3] The amended complaint incorporates but does not repeat the
original Complaint. Am. Compl. 1. Count I is in the Complaint,
while Counts II and III are in the amended complaint.

for July 2012, Am. Scheduling Order, ECF No. 125. The current

motion for summary judgment was filed on February 9, 2012. Mot.

Summ. J. Defs.' Borgosz Entities ("Mot. Summ. J."), ECF No. 137.

The parties briefed the motion extensively, and after

reassignment of this case in May 2012, ECF No. 150, oral argument

was set for July 27, 2012, Clerk's Notes, June 21, 2012. After

the motion session, this Court took the motion under advisement

until September 2012 in order to give the parties an opportunity

privately to resolve the claims. Clerk's Minutes, July 27, 2012,

ECF No. 155. Informed that the parties were unable to resolve

their differences, this Court now addresses the motion for

summary judgment.

## B.   Facts

### 1.   The Parties

The plaintiff Duncan-Williams is a securities firm based in

Memphis, Tennessee. Pl.'s Resp. Opp'n Defs.' Mots. Dismiss &

Supp. Mem. Law 4, ECF No. 35. The defendant Capstone Improvement

District (the "District"), a political subdivision of the State

of Alabama created by an act of that state's legislature, issued

bonds relating to a new real estate project entitled the Capstone

Development Project (the "Capstone Development"). Pet. Removal,

Ex. A, Compl. Contribution & Indem. ("Compl.") ¶ 17, ECF No. 1-1;

Answer Borgosz Entities, Countercl. Eugene H. Borgosz ("Borgosz

Defs.' Answer") ¶ 17, ECF No. 75. The defendant Capstone

4

Development, LLC (the "Developer"), one of the Borgosz entities, was the developer for the real estate project. Compl. ¶ 2; Borgosz Defs.' Answer ¶ 2. Duncan-Williams alleges that Selective Services, Inc. ("Selective Services") and Triangle Construction Management, LLC ("Triangle Construction") were in charge of the construction of the Capstone Development. Compl. ¶¶ 42, 46. The defendant, Eugene H. Borgosz ("Borgosz"), owned, controlled, or was an agent of both Selective Services and Triangle Construction. Id. ¶¶ 4-5.

The Tanner law firm served as counsel both to the Developer and to the District. July 2010 Order 5. The defendant, Hilburn, represented Southern Financial and Duncan-Williams as underwriters' counsel. Id. at 6.

University Club Group, Inc., a Delaware corporation with its principal place of business in South Carolina, allegedly issued security for the bonds. Id. at 9; Compl. ¶ 6. The defendants, UC Properties, LLC and Nexsen Pruet, LLC, are South Carolina limited liability companies. July 2010 Order 9. UC Properties allegedly issued security for the bonds. Compl. ¶ 7. Nexsen Pruet allegedly committed torts and breached its contract with Duncan-Williams. Id. ¶ 11.

## 2. **Underlying Dispute as Alleged**[4]

Pursuant to arrangements with the defendants, Duncan-Williams acted, along with the South Carolina-based securities firm Southern Financial, Inc., as underwriter for a $13,000,000 bond offering to fund the construction of a 544-lot residential development in Brookwood, Alabama, known as the Capstone Development. Id. ¶ 15. Defendant Capstone Improvement District issued the bonds. Id. ¶ 17. Duncan-Williams and Southern Financial each purchased half of the bonds issued. Id. ¶ 23. After its purchase of the bonds, Duncan-Williams resold them to its customers as investments. Id. ¶ 24. In 2001, the Capstone Development "began to experience cost overruns." Id. ¶ 43. Selective Services and Triangle Construction eventually walked off the job, refusing to complete construction given the increasing costs. Id. ¶ 45. Despite a bond guaranteeing completion of the Development, the Developer did not hire a replacement construction company, and the Capstone Development was never completed. Id. ¶¶ 47, 49-50. Because the Development was not completed and few lots were sold, no funds were available to pay interest and principal to the bondholders. Id. ¶ 50. There was also no collateral backing the bonds because the Development had failed. Id.

---

[4] This background is drawn almost verbatim from the court's July 7, 2010, memorandum and order.

6

The bonds defaulted in August 2003. Id. ¶ 51. Following

default, two customers of Duncan-Williams, Ruskin A. (Rusty)

Vest, Jr., ("Vest") and Industrial Products Company, Inc. (the

"Vest Plaintiffs"), sued Duncan-Williams in the Circuit Court for

Maury County, Tennessee. See Pet. Removal, Ex. 1, Compl. ("Vest

Compl."), ECF No. 1-2. They alleged that Duncan-Williams had

violated Tennessee's Blue Sky Laws, breached its fiduciary

duties, and committed negligence and common law fraud by failing

to disclose to bondholders the deteriorating financial position

of the Capstone Development. Vest Compl. ¶¶ 21-39. The case

went to trial in state court in January 2008. Compl. ¶ 63.

### 3. Undisputed Facts Undergirding Summary Judgment

In 2000 and 2001, a Tennessee resident of Maury County named

Rusty Vest invested in a municipal bond issue called Capstone.

DWI's Resp. Opp'n Mot. Summ. J. ("Pl.'s Mem."), ECF No. 142; Id.,

Ex. 11, DWI's Resp. Borgosz Defs.' Statement Undisputed Material

Facts ("Pl.'s Facts") ¶ 1, ECF No. 142-11. A company of which

Vest was president, Industrial Products Company, Inc. (IPC), also

invested in the Capstone bond issue. Pl.'s Facts ¶ 1. Vest

made these Capstone bond purchases based on the representations

and recommendations of a representative of Duncan-Williams.[5] Id.

¶ 2. Vest had done business with Duncan-Williams for a number of

---

[5] Duncan-Williams disputes that anyone other than Vest made
the decision to purchase bonds from Duncan-Williams.

years when he made the Capstone investments. Id. ¶ 3. During the time Vest did business with Duncan-Williams, Duncan-Williams held itself out as an expert in municipal bonds.[6] Id. ¶ 4. By the time Vest purchased Capstone bonds from Duncan-Williams, he had already purchased a large amount of other municipal bonds from them, relying on Duncan-Williams to recommend bonds that met Vest's needs and risk tolerance. Id. ¶¶ 5-6. A Duncan-Williams representative told Vest that Duncan-Williams was very familiar with the Capstone project and that they had never underwritten a bond issue that had gone under. Id. ¶ 7. A Duncan-Williams representative also told Vest that because the Capstone project had a connection to the University of Alabama, where its president Duncan F. Williams attended college, the company would never let this project fail.[7] Id. ¶ 8. Prior to purchasing the Capstone bonds, Vest had no dealings with Eugene H. Borgosz and had not met him. Id. ¶ 10. Vest met Borgosz several times in 2003 and 2004 and held Capstone bonds until February 2007. Id.

In its answer in the Vest v. Duncan-Williams case in state court (the "Vest action") and throughout the trial of that case, Duncan-Williams argued that the misconduct of the Moving

---

[6] For the purpose of summary judgment only, Duncan-Williams does not dispute these facts.

[7] Duncan F. Williams denies that this statement was authorized by Duncan-Williams, Inc., or that it intended to insure the Capstone bonds, which Vest knew were high risk and speculative. Pl.'s Facts ¶ 8.

Defendants here was the cause of the Vest Plaintiffs' loss. Id. ¶ 11. Duncan-Williams also claimed that several other entities were also at comparative fault but did not claim that any other entity was a joint tortfeasor or intentional tortfeasor. Id. Following a two-week trial, the jury returned a verdict in favor of the Vest Plaintiffs on all counts, concluding that Duncan-Williams had misrepresented the Capstone investment, breached its fiduciary duties to the Vest Plaintiffs, acted negligently, and violated the Tennessee Securities Act and the Tennessee Consumer Protection Act. Id. ¶ 12. The jury also made a first-stage decision that punitive damages ought be awarded against Duncan-Williams. Id. Although Borgosz testified, he was not a party in that trial, and the jury concluded that no comparative fault ought be assigned to the Borgosz entities. Id.

Prior to the second-stage hearing on the amount of punitive damages, the Vest Plaintiffs and Duncan-Williams agreed to settle the state lawsuit for $1,200,000. Id. ¶ 14. The parties agreed to the entry of a final judgment in favor of the Vest Plaintiffs in that amount. Id. In the settlement of the Vest action, there was no agreement concerning any allocation of the $1,200,000 payment among different categories of damages, expenses, and fees that Vest and his company had sought from Duncan-Williams. Id. ¶ 15. The parties dispute whether there were discussions or

9

agreements concerning the release of Vest's potential claims against parties other than Duncan-Williams. Id. ¶ 16.

None of the Moving Defendants ever agreed to indemnify Duncan-Williams with respect to any act or circumstance relating to the Capstone bond issue or otherwise.[8] Id. ¶ 19. The Capstone Developer Agreement (the "Developer Agreement") provides that the Developer would indemnify the Capstone Bond District and its agents in certain instances but contains no provision under which any of the Borgosz entities agreed to indemnify Duncan-Williams in any respect. Id. ¶ 20. At no time prior to Duncan-Williams's payment of the $1,200,000 judgment in the Vest action did Duncan-Williams tell Borgosz that it intended to assert indemnification claims against him with respect to the money it paid to Vest and his company. Id. ¶ 22.

## C. **Federal Jurisdiction**

This case was removed from the Tennessee courts on the ground of diversity jurisdiction. Pet. Removal. All defendants are citizens of Alabama, and the plaintiff is a citizen of Tennessee. See supra section I.B. The amount in controversy is $1,200,000.

---

[8] Duncan-Williams does not dispute this but asserts rights of indemnity through the common law and the assignment of indemnity rights from the District.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, . . . admissions on file, . . . [and] affidavits" show that "no genuine issue as to any material fact" exists. Fed. R. Civ. P. 56. An issue of fact is "genuine" if there exists a sufficient evidentiary basis on which the trier of fact could find for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it will affect the outcome of the case under the applicable law. Id.

The court must view disputed facts and draw reasonable inferences in "the light most favorable" to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Other than facts admitted by both parties, courts must disregard all evidence from the moving party - even if unopposed - which the jury is free to reject, i.e., all evidence upon which the moving party bears the burden of proof. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). Accordingly, on any issue for which the moving parties bear the burden of proof, the Court will disregard evidence in favor of the moving parties – even if uncontradicted - that the jury would be free to disbelieve.

11

## B. Count I: Indemnity

Duncan-Williams claims express and implied indemnity rights against the Moving Defendants.

### 1. Count I for Indemnity Is Not Barred by Collateral Estoppel

The Moving Defendants argue that this claim is barred by collateral estoppel based on a per curiam Eleventh Circuit opinion in a suit by Duncan-Williams against U.S. Bank National Association. The Eleventh Circuit upheld a Northern District of Alabama court that granted summary judgment to U.S. Bank National Association on indemnity and contribution claims by Duncan-Williams. Duncan-Williams, Inc. v U.S. Bank Nat'l Ass'n, 390 F. App'x 887, 888-89 (11th Cir. 2010). In that case, Duncan-Williams sought contribution under the Tennessee Uniform Contribution Among Tort-Feasors Act (and also indemnity) for its settlements with the Vest Plaintiffs and with another investor, Terri Jones. Id. at 889. The Eleventh Circuit and the district court both concluded that Duncan-Williams was not entitled to contribution or indemnity under Alabama or Tennessee law. Id. The indemnity claims failed as matter of law because Alabama does not have a right to indemnity between joint tortfeasors. Id. Under both Alabama and Tennessee law, indemnity is available only in a case where "one party is held liable solely by imputation of law because of a relation to a wrongdoer." Id. (quoting Owens v. Truckstops of Am., 915 S.W.2d 420, 433 (Tenn. 1996)).

12

The Tennessee Supreme Court recently confirmed that
collateral estoppel generally applies only when the issue at hand
"has already been litigated in a prior suit between the same
parties, even though based upon a different cause of action, if
the determination of such issue in the former action was
necessary to the judgment." Clark v. Sputniks, LLC, 368 S.W.3d
431, 437 (Tenn. 2012) (emphasis added) (quoting Homes Ins. Co. v.
Leinart, 698 S.W.2d 335, 336 (Tenn. 1985)). Here, the Moving
Defendants were not parties to the Vest action, and therefore
collateral estoppel does not apply.

## 2. The Express Indemnity in Count I Fails Under Alabama Law

In 2009, the District assigned its contractual indemnity
rights to Duncan-Williams by way of stipulation.[9]  Joint

---

[9] The stipulation states, in part:

Having little or no assets other than public roads,
public utilities, the corresponding agreements,
guarantees and indemnification rights against the
Developer and other obligated persons who expressly
agreed and did undertake to perform all conditions
precedent and necessary for the issuance and sale of the
Bonds to Duncan-Williams, Inc. in Memphis Tennessee and
Southern Financial Group in Columbia South Carolina, the
District does hereby assign, interplead, quitclaim and
convey to Duncan-Williams, Inc., Memphis, Tennessee any
and all rights or causes of action it has or may have,
including contractual indemnification rights, against the
Developer, the Developer's counsel, the District's
counsel, guarantors of the Bonds, the Trustee, and any
other person or entity who aided, assisted, abetted or
performed any act or action on behalf of the District in
connection with the issuance and sale of the bonds to
Duncan-Williams, Inc. in Memphis, Tennessee and the
expressly contemplated resale by it to any of

13

Stipulation Capstone Improvement Dist. & Duncan-Williams, Inc.
This Court must first determine which state law to apply to the
express indemnity claim. The Developer Agreement, which is the
source of Duncan-Williams's express indemnity, includes a choice-
of-law clause that states "This agreement shall be governed by
and construed in accordance with the laws of the State of
Alabama." Compl., Ex. 8, Developer Agreement 22, ECF No. 1-10.

In a diversity action, "the law of the forum state,
including the choice-of-law rules, apply." Montgomery v. Wyeth,
580 F.3d 455, 459 (6th Cir. 2009) (citing Uhl v. Komatsu Forklift
Co., 512 F.3d 294, 302 (6th Cir. 2008)). As a forum state,
"Tennessee will honor a choice of law clause if the state whose
law is chosen bears a reasonable relation to the transaction and
absent a violation of the forum state's public policy." Wright
v. Rains, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003) (quoting
Bright v. Spaghetti Warehouse, Inc., No. 03A01-9708-CV-00377,
1998 WL 205757, at *5 (Tenn. Ct. App. Apr. 29, 1998)) (internal
quotation marks omitted). The Capstone Improvement Project was
located in Brookwood, Alabama, Borgosz (another signatory of the
Developer Agreement) is an Alabama resident, Compl. ¶ 3, and the
Developer and Triangle Properties, LLC are Alabama companies, id.

Duncan-Williams, Inc.'s customers in satisfaction of its
contractual obligation to indemnify Duncan-Williams, Inc.

Joint Stipulation Capstone Improvement Dist. & Duncan-Williams,
Inc. 5-6 (emphases added).

¶ 2, Developer Agreement 9. Given that the project and signatories were located in Alabama, there is a reasonable relation between the choice-of-law provision and the state law chosen. Nor is there a public policy that ought bar the choice-of-law provision. The Court honors this choice-of-law clause in the Developer Agreement and applies Alabama law to the contract.[10]

### a. Alabama Law Requires Notice to Preserve Indemnity Claims

In Alabama, "an indemnitee must give timely notice to the indemnitor in order to preserve an indemnity claim." Ex parte

---

[10] Alabama law would also apply because the contract was signed in Alabama.

Because the rights and obligations of contracting parties are governed by the law in effect when they entered into their contract, C-Wood Lumber Co. v. Wayne County Bank, 233 S.W.3d 263, 282 (Tenn. Ct. App. 2007), the courts have recognized that:

The lex loci contractus [the law of the place of the contract] becomes as much a part of the contract as if specifically incorporated therein, and, in the absence of evidence of contrary intention, the parties must be held to have contemplated the application of that law to the terms of their agreement.

Ellis v. Pauline S. Sprouse Residuary Trust, 280 S.W.3d 806, 814 (Tenn. 2009) (alteration in original) (quoting Moak v. Continental Cas. Co., 4 Tenn. App. 287, 292 (1927)). Alabama notaries certified the signatures on the Developer Agreement of Borgosz and William D. Crawford, as managers of Triangle Properties, LLC, and Capstone Development, LLC, and Alton C. Hyche as Chairman of the Capstone Improvement District. Developer Agreement 25-27. Although the location of signing is not mentioned in the plaintiff's facts, there is no genuine dispute as to this fact.

<u>Jones, Morrison, Womack & Dearing, P.C.</u>, 939 So. 2d 912, 915
(Ala. 2006) (citing <u>Burkes Mech., Inc.</u> v. <u>Ft. James-Pennington,</u>
<u>Inc.</u>, 908 So. 2d 905, 911 (Ala. 2004)). This notice, however, is
fact dependent and "must not come so late that the indemnitor is
<u>prejudiced</u> in preparing the defense." <u>Id.</u> (quoting <u>Burkes Mech.</u>,
908 So. 2d at 911) (internal quotation mark omitted).
"Conversely, tardiness <u>without prejudice</u> provides no defense."
<u>Id.</u> (quoting <u>Burkes Mech.</u>, 908 So.2d at 911) (internal quotation
marks omitted).

In <u>Burkes Mechanical, Inc.</u> v. <u>Ft. James-Pennington, Inc.</u>,
908 So. 2d 905, the Alabama Supreme Court distinguished between
actual prejudice and tardiness without prejudice. <u>Id.</u> at 911-12
(noting that indemnitee did not lack timely notice of the
underlying action). The court ruled that a twenty-month delay in
seeking indemnity and a three-year delay in filing a third-party
complaint against the indemnitor did not preclude recovery. <u>Id.</u>

Here, taking all facts and inferences in the light most
favorable to Duncan-Williams, the Moving Defendants knew of the
suit at least as early as October 2004. Pl.'s Facts ¶ 10 (noting
a deposition by Borgosz in the Vest action on October 1, 2004).
If the bonds defaulted in September 2003 as alleged, the Moving
Defendants were on notice of the suit at most thirteen months
after the bond default, and therefore the timing of the suit did
not cause prejudice. <u>Cf. Ex parte Jones</u>, 939 So. 2d, at 917-18
(holding that a party that settled but failed to immediately

16

notify a third party of indemnity claims did not waive indemnity claims).

### b. **Alabama Law Does Not Permit Indemnification Between Joint Tortfeasors**

If Duncan-Williams is a joint tortfeasor, Alabama law does not permit it to recover under indemnity. See Ex parte Stenum Hosp., 81 So. 3d 314, 318 (Ala. 2011) ("It is well settled that, under Alabama law, joint tortfeasors are not entitled to contributions from one another and that . . . joint tortfeasors are not entitled to indemnity from one another." (citing J.C. Bradford & Co. v. Calhoun, 612 So. 2d 396, 398 (Ala. 1992))). Like any good rule, there are exceptions, primarily where a joint tortfeasor was only technically at fault, or where the other tortfeasor was the "proximate or primary cause of the injury." J.C. Bradford & Co., 612 So. 2d at 398 (quoting Crigler v. Salac, 438 So. 2d 1375, 1385 (Ala. 1983)). The survival of Duncan-Williams's express indemnity claim thus turns on whether there is a genuine dispute of material fact over whether Duncan-Williams was a joint tortfeasor and the nature of any culpable acts. Although Duncan-Williams concedes that a jury decided that it was at fault, Pl.'s Facts ¶ 12, Duncan-Williams disputes that judgment was entered on the jury verdict or that Duncan-Williams asserted at trial that the Moving Defendants were joint tortfeasors or intentional tortfeasors, id. ¶ 11.

17

An analysis of the actual judgment in the Vest action puts this dispute to rest. Decl. H. Naill Falls Jr. ("Aff. Falls"), Ex. B, Jury Verdict ("Jury Verdict"), ECF No. 137-4. Entitled "Judgment and Order," the court's order stated:

This case came to be heard before a jury duly impaneled commencing on the 2nd day of January, 2008, and concluding on the 16th day of January, 2008. After due deliberation and receiving all evidence and arguments of counsel, Judgment is rendered in favor of the Plaintiffs and against the Defendant in the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) which amount is inclusive of all discretionary costs and attorney's fees.

IT IS THUS ORDERED, ADJUDGED AND DECREED:

That Judgment is rendered in favor of the Plaintiffs and against the Defendant in the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) which amount is inclusive of all discretionary costs and attorney's fees.

Aff. Falls, Ex. D, Judgment & Order ("Judgment & Order"), ECF No. 137-4. In Crum v. Chance, a similar situation occurred where the parties settled before a jury that had already brought back a verdict could come to an agreement on punitive damages. 1994 WL 398820, at *1 (Tenn. Ct. App. July 22, 1994). The final judgment of the court included mention of the specific amount of the jury verdict ($25,000) and concluded that the punitive damages were settled for an additional $1,500. Id. at *2. When asked to decide whether the verdict was a settlement or a verdict, the appeals court concluded that "the record contain[ed] a clear, concise and unambiguous judgment on a jury verdict for the $25,000.00 in compensatory damages." Id. at *4. As "[j]udgments are to be construed like other written instruments," the appeals

18

court construed the judgment "to give effect to every part" and
ultimately held that the trial "court intended to enter a
judgment on the jury verdict for $25,000." Id.

Although the record in this case is not as unambiguous, it
is still possible to divine the intention of the judge. The
plain terms of this judgment suggest that the Tennessee court
endorsed the jury's verdict of liability as to Duncan-Williams.
See Jury Verdict. The court rendered judgment "against the
Defendant [Duncan-Williams]" after "receiving all evidence and
arguments of counsel." Judgment & Order. Although in general a
settlement prior to judgment would eliminate a pending jury
verdict, here the Tennessee judge chose both to accept the amount
of damages proposed by the two parties and to enshrine the jury
verdict. In doing so, the judge expressly mentioned that a jury
had been convened and had deliberated, that evidence had been
presented, and that a judgment had been entered against the
defendant, Duncan-Williams.

The jury verdict explicitly answers the question of the
nature of Duncan-Williams's torts. The jury found
Duncan-Williams committed misrepresentation "intentionally or
recklessly," Jury Verdict ¶ 1, and that Borgosz, the Developer,
and Selective Services were not at fault, id. ¶¶ 19-21.

In line with general principles of comity, this Court
presumes that the Tennessee judge knew the import of his judgment
and order. As a result, the judgment seems to require a

19

conclusion that Duncan-Williams was at fault in the Vest action,[11] was a tortfeasor, and was the proximate cause of injury,[12] and that its express indemnity claim must fail under Alabama law.[13] This Court thus GRANTS summary judgment on the express indemnity claim.

### 3. The Implied Indemnity in Count I Fails Under Alabama or Tennessee Law

Duncan-Williams's implied indemnity claims are also subject to a choice-of-law analysis. This Court, sitting in diversity, must apply the substantive law of the forum state except where otherwise required. E.g., Colonial Refrigerated Transp., Inc. v. Worsham, 705 F.2d 821, 825 (6th Cir. 1983). Tennessee uses the "most significant relationship" approach to choice-of-law, where the court will apply the law of the state in which the injury occurred "unless some other state has a more significant relationship to the litigation." Montgomery, 580 F.3d at 459. The Sixth Circuit has also suggested that for questions of choice

---

[11] Unlike in Crum, the Court need not conclude that the jury verdict included punitive damages. Here, the final judgment included fees, costs, and presumably punitive damages.

[12] Although the jury verdict did not include a decision on liability as to Triangle Construction (one of the Moving Defendants here), the finding that Duncan-Williams intentionally or recklessly caused the tort eliminates the possibility that an exception to the general prohibition of indemnity from joint tortfeasors applies. See J.C. Bradford & Co., 612 So. 2d at 398.

[13] Contra Duncan-Williams, 390 F. App'x at 889 (concluding in an unpublished opinion that "[a]fter the jury ruled against Duncan-Williams, the parties settled the case for $1.2 million before judgment was entered on the jury's verdict").

20

of law of indemnity, the law applying to the underlying tort applies. See In re Air Crash Disaster, 86 F.3d 498, 542-43 (6th Cir. 1996) ("[I]t would be an anomalous result to hold that the law of [the workers' state's] should apply in the underlying personal injury action, but that the law of Michigan applies to the derivative claims of contribution or indemnity brought in a subsequent suit." (second alteration in original) (quoting General Motors Corp. v. Nat'l Auto Radiator Mfg. Co., 694 F.2d 1050, 1054 (6th Cir. 1982)) (internal quotation marks omitted)); cf. Safeco Ins. Co. of Am. v. Criterion Inv. Corp., 732 F. Supp. 834, 841 (E.D. Tenn. 1989) ("The parties did not address the issue of the choice of law in this diversity action, but, since the indemnity agreement was executed by indemnitors in Tennessee to be performed here, the Court will apply Tennessee law."). This analysis counsels that this Court must also apply Alabama law to the implied indemnity cause of action.

A review of the acts and relationships in this case confirm that Alabama law applies.[14] "To determine which state has the 'most significant relationship,' Tennessee courts consider seven

---

[14] This case may be an example of forum shopping. Duncan-Williams already has lost an indemnity and contribution case in the Northern District of Alabama, where the contracts were signed and most parties are citizens. Duncan-Williams cannot succeed under Alabama law, so perhaps it has chosen to bring this suit in Tennessee in the hope that Tennessee law would be applied and give it a chance to receive indemnity or contribution.

21

principles . . . ." Arvest Bank v. Byrd, 814 F. Supp. 2d 775,

789 (W.D. Tenn. 2011) (Mays, J.). These principles are:

  (a) the needs of the interstate and international systems,

  (b) the relevant policies of the forum,

  (c) the relevant policies of other interested states and the
  relative interests of those states in the determination of
  the particular issue,

  (d) the protection of justified expectations,

  (e) the basic policies underlying the particular field of
  law,

  (f) certainty, predictability, and uniformity of result, and

  (g) ease in the determination and application of the law to
  be applied.

Id. (citing Timoshchuk v. Long of Chattanooga Mercedes-Benz, No.

E2008-01562-COA-R3-CV, 2009 WL 3230961, at *10 (Tenn. Ct. App.

Oct. 8, 2009)). Courts applying these principles consider four

factors: "(a) the place where the injury occurred, (b) the place

where the conduct causing the injury occurred, (c) the domicile,

residence, nationality, place of incorporation and place of

business of the parties, [and] (d) the place where the

relationship, if any, between the parties is centered." Id. at

789-90 (alteration in original) (quoting Timoshchuk, 2009 WL

3230961, at *11) (internal quotation marks omitted).

     Duncan-Williams acknowledges that the Moving Defendants are

all Alabama citizens or residents. Compl. ¶¶ 2-5.

Duncan-Williams is a Tennessee corporation headquartered in

Shelby County, Tennessee. Id. ¶ 1. Assuming for purposes of

summary judgment that Duncan-Williams's characterization of the
injury in this suit is correct, see Scott, 550 U.S. at 378, the
injury is most related to events or contracts in Alabama. For
example, Duncan-Williams states that it was the breach of "the
obligations imposed on the Developer in the Developer Agreement"
that proximately caused the losses Duncan-Williams sustained.
Pl.'s Mem. 9. The Developer Agreement was signed in Alabama and
included Alabama choice-of-law provisions. See supra section
II.B.2, at 13-14. Duncan-Williams alleges that Selective
Services breached their contract by failing to complete the
construction after being paid the entire contract amount. Pl.'s
Mem. 10.

Because the construction site was located in Alabama, this
breach, presumably, took place in Alabama. Selective Services
hired Triangle Construction to oversee the acquisition,
installation, and construction of the improvements to the
subdivision. Id. at 4. Loosely summarized, the injury leading
to indemnity would be the alleged scuttling of the Capstone
Development in Alabama by the defendants, who are all Alabama
corporations and residents.

These facts compel the necessary conclusion that the conduct
leading to the injuries primarily occurred in Alabama. Finally,
even if the relationship between the parties centered in

23

Tennessee,[15] the Court would still apply Alabama law because the place of injury, most parties, and the place where the conduct causing the injury occurred were in Alabama. If the Court applies Alabama law, then summary judgment on the implied indemnity claims must be allowed for the reasons already discussed as to express indemnity.

Nonetheless, this is a close call - and perhaps the Court ought permit the implied indemnity claims to proceed under Tennessee law.[16] In Tennessee, "an obligation to indemnify may arise by implication from the relationship of the parties." Lusk v. Jim Walter Homes, Inc., 648 S.W.2d 935, 939 (Tenn. 1983) (quoting Houseboating Corp of Am. v. Marshall, 553 S.W.2d 588, 589 (Tenn. 1977)).

Courts in Tennessee imply indemnification "when the obligation is a necessary element of the parties' relationship," or fairness demands shifting a loss to the party "whose fault or responsibility is qualitatively different from the other parties." AutoZone, Inc. v. Glidden Co., 737 F. Supp. 2d 936, 944 (W.D. Tenn. 2010) (Mays, J.) (quoting Winter v. Smith, 914

---

[15] In his July 2010 Order, Judge Mays outlined the contacts between the Borgosz entities and Tennessee and ruled that the Court had personal jurisdiction.

[16] In a prior memorandum in this case, Judge Mays noted the state of Tennessee's interests in the case. July 2010 Order 25. In particular, some of the alleged misrepresentations occurred in Tennessee and injured a Tennessee company (Duncan-Williams), and the sale of bonds injured other Tennessee residents. Id.

24

S.W.2d 527, 542 (Tenn. Ct. App. 1995) (internal quotation marks omitted)). Absent a contractual provision, indemnification is implied only if the target of indemnification breached a contract or engaged in tortious conduct. Id.

"However, where implied indemnity is based on the legal relationship between the parties, the traditional principles of indemnity continue to apply." Owens v. Truckstops of Am., 915 S.W.2d 420, 435 (Tenn. 1996); cf. Stiver Mktg., Inc. v. Performance Bus. Forms, Inc., No. 01-A-019108CH00276, 1991 WL 254564, at *3 (Tenn. Ct. App. Dec. 4, 1991) (noting that a principal, held liable for the negligent acts of its agent solely because of their legal relationship, has an implied right to indemnity against the negligent agent).

The primary obstacle to Duncan-Williams's claim for indemnity under Tennessee law is the doctrine of unclean hands. "As a general rule, 'a person who . . . has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.'" Southern Coal & Coke Co. v. Beech Grove Mining Co., 53 Tenn. App. 108, 116 (Ct. App. 1963) (emphasis added) (quoting Restatement (First) of Restitution § 76 (1937)). According to a comment of the Restatement, "[t]he rule applies where the payor has been paid by the principal obligor or by a third person for assuming the liability as well as where the

25

liability has been assumed gratuitously." Restatement of Restitution § 76 cmt. b. As the state court's judgment against Duncan-Williams included a decision of fault, i.e, "That Judgment is rendered in favor of the Plaintiffs and against the Defendant," the implied indemnity claim is also barred by Tennessee law. Thus, the Court would grant summary judgment on implied indemnity whether Alabama or Tennessee law applies. In summary, this Court GRANTS summary judgment on Count I for indemnity, whether express or implied.

## C. Count II: Contribution Claims under the Tennessee Securities Act

Duncan-Williams brings a contribution claim under the Tennessee Securities Act, which in a section on "fraud and misrepresentation; liability in civil actions" states that "[t]here is contribution as in cases of contract among the several persons so liable." Tenn. Code Ann. § 48-2-122(g). This contribution claim is barred by the statute of repose in section 48-2-122(h) of the Tennessee Code Annotated, which states:

No action shall be maintained under this section unless commenced before the expiration of five (5) years after the act or transaction constituting the violation or the expiration of two (2) years after the discovery of the facts constituting the violation, or after such discovery should have been made by the exercise of reasonable diligence, whichever first expires.

Tenn. Code Ann. § 48-2-122(h). Duncan-Williams argues that the contribution claim is not an action "under" section 48-2-122. In Cumberland & Ohio Co. of Texas v. Goff, No. 03:09-CV-436, 2009 WL

3517531 (M.D. Tenn. Oct, 22, 2009), the district judge concluded
that although the language of the statute of section 48-2-122
included contribution claims, because it is a statute of repose,
"[i]t is not surprising, then, that the statute might sometimes
bar a contribution claim before it has accrued." Id. at *4.
Although limiting their availability, the Tennessee Securities
Act does not eliminate contribution rights, as defendants can
"file third-party claims for contribution as soon as they are
initially sued." Id. (citing Tenn. R. Civ. P. 14.01) ("[S]uch
contribution claims are not premature." (citing Velsicol Chem.
Corp. v. Rowe, 543 S.W.2d 337, 343-44 (Tenn. 1976))). "The right
to contribution contained in the Tennessee Securities Act is thus
an exception to the general rule, and it is perfectly plausible
that the legislature would attach harsh conditions to such a
right." Id.

Here, the Vest Plaintiffs bought their Capstone bonds in
2000 and 2001. The Vest action was filed in May 2003. This
lawsuit was commenced in 2009 and was clearly not filed within
either the two-year or five-year limitation. Even if the acts
constituting a violation of the statute happened immediately
before the Vest Plaintiffs filed in 2003, this suit would be
barred. Accordingly, this Court GRANTS summary judgment on the
Tennessee Securities Act contribution claim.

## D. Count III: Contribution Claim Under the Uniform Contribution Among Tort-feasors Act

Duncan-Williams's second claim for contribution is under the Tennessee Uniform Contribution Among Tort-feasors Act.

### 1. Count III Is Not Barred by Collateral Estoppel

Just as discussed in section II.B.1, the Moving Defendants argue that this claim is barred by collateral estoppel based on the Eleventh Circuit's per curiam opinion in a suit by Duncan-Williams against U.S. Bank National Association. As Tennessee courts only permit collateral estoppel when the issue "has already been litigated in a prior suit between the same parties," Clark, 368 S.W.3d at 437 (emphasis added), and the Moving Defendants in the current suit were not parties to the Vest action, collateral estoppel does not apply.

### 2. Count III Fails as Matter of Law and Undisputed Fact

Under the Tennessee Uniform Contribution Among Tort-Feasors Act, a "tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement." Tenn. Code Ann. § 29-11-102. This Act also "provides that a release given to one of two or more tortfeasors 'does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.'" Woody v. A.W. Chesterton Co., No. M2007-01210-COA-R9-CV, 2008 WL 696160, at *3 (Tenn. Ct. App.

28

Mar. 13, 2008) (quoting Tenn. Code Ann. § 29-11-105(a)(1)).
Tennessee courts interpret this section of the Act literally.
Baptist Hosp., Inc. v. Emergency Coverage Corp., No. 98-5434,
1999 WL 196503, at *1 (6th Cir. Mar. 26, 1999). In Baptist
Hospital, 1999 WL 196503, and Olin Corp. v. Yeargin Inc., 146
F.3d 398 (6th Cir. 1998), the Sixth Circuit dismissed suits for
contribution as there was no record evidence that settlement
extinguished the original plaintiffs' claims against third-party
defendants. See Baptist. Hosp., 1999 WL 196503, at *1-2; Olin,
146 f.3d 406-07.

Here, the Moving Defendants argue that the settlement
between the Vest Plaintiffs and Duncan-Williams did not include a
release of claims against the Moving Defendants. Mot. Summ, J.,
Attach. 2, Mem. Supp. Mot. Summ. J. Defs. Borgosz Entities 10,
ECF No. 137-2. Duncan-Williams (in an apparent effort to cure
the defects of its Northern District of Alabama suit) has
included two affidavits that claim that the settlement in the
Vest action included releases of the Moving Defendants. Pl.'s
Mem. Attach. 4, Aff. Lori H. Patterson ("Patterson Aff.")
¶¶ 12-14, ECF No. 142-4; id., Attach. 5, Aff. Duncan F. Williams
("Willams Aff.") ¶¶ 5-6, ECF No. 142-5.

Lori Patterson, counsel for Duncan-Williams in the Vest
action, alleges that counsel advised the Vest defendants that the
$1,200,000 settlement offer included release of all parties and
would be full satisfaction of all of the Vest Plaintiffs' claims.

Patterson Aff. ¶¶ 12-13. Patterson claims that the Vest

Plaintiffs accepted these terms. Id. ¶ 14. The jury was

dismissed, and although Patterson claims to have tried to get the

Vest Plaintiffs to execute a written agreement, they refused, and

Duncan-Williams paid the settlement amount. Id. ¶ 15. Duncan F.

Williams (the principal of Duncan-Williams, Inc.) makes similar

claims in his affidavit. Williams Aff. ¶¶ 5-6.

Even accepting Duncan-Williams's affidavits as true, this

Court does not have before it enough to allow this contribution

claim to proceed past summary judgment. Duncan-Williams does not

allege that there is record evidence of the settlement agreement

or of any releases. Therefore, the claim for contribution must

be dismissed as insufficient as matter of law and fact. See

Olin, 146 F.3d at 406-07. The Court GRANTS summary judgment on

Count III, contribution under the Uniform Contribution Among

Tort-Feasors Act.

**III. CONCLUSION**

Although the factual and legal workings of this case are

intricate, the three counts fail either as matter of law or on

the undisputed facts. The grant of summary judgment is not

grounded on some conclusion that the Borgosz entities are without

fault but rather on the judgment that Duncan-Williams cannot

claim indemnity or contribution from the Moving Defendants in

light of existing judicial decisions and the extensive delays in

30

bringing suit. The Court grants summary judgment on all three
counts.

  **SO ORDERED.**

William A. Young
William G. Young[17]
District Judge

Dated: December 7, 2012

---

[17] Of the District of Massachusetts, sitting by designation,
ECF No. 150.

31